IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NOLAN KINARD FLOYD, SR.,

   Plaintiff,

v.                                                              Civil Action No.: MJM-22-1530

JEFFREY NINES, et al.,

   Defendants.

## MEMORANDUM OPINION

Self-represented plaintiff Nolan Kinard Floyd, Sr. initiated this civil rights action by filing a complaint, pursuant to 42 U.S.C. § 1983 against Warden Jeffrey Nines, Chief of Security Ronald Stotler,[1] Sgt. Benjamin Crowe, Lt. Sean McKenzie, and Hearing Officer Christopher Wedlock (collectively, "Defendants").[2] ECF No. 1. Floyd brings claims for violations of his Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights. On March 28, 2023, Defendants moved to dismiss or for summary judgment to be granted in their favor. ECF No. 21. Floyd opposes the Motion. ECF No. 24. Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Loc. R. 105.6. (D. Md. 2023). For reasons that follow, the Court will grant in part and deny in part Defendants' Motion.

### I. Factual Allegations

At all times relevant to the Complaint, Floyd was a pretrial detainee in the custody of the Maryland Division of Corrections ("DOC"). ECF No. 1 at 2. Defendants were correctional officials and employees of the Maryland Department of Corrections. *See id.* at 2–3. On March

---

[1] In the complaint, Floyd named "Chief of Security Scottland" as a defendant. ECF No. 1 at 2. The litigation coordinator later identified the Chief of Security's full and correct name as Ronald Stotler. ECF No. 13.
[2] Counsel also provides the full names of defendants Crowe and McKenzie. ECF No. 21. The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names on the docket.

21, 2022, at approximately 9:30 a.m., Floyd was transported from Western Correctional Institution ("WCI") to North Branch Correctional Institution ("NBCI"). *Id.* at 3. Floyd entered NBCI barefoot, wearing only a pair of shorts. *Id.* Floyd was escorted to Housing Unit #1, Cell #C-5, which was filled with feces, urine, and bacteria. *Id.* at 4. He reported the conditions to Sgt. Crowe. *Id.* Floyd was deprived of all his property, despite his requests to Warden Nines and Chief Stotler for his property to be delivered to him. *Id.* Floyd further complains that he was not advised of his transfer. *Id.* at 5.

On May 5, 2022, Lt. McKenzie asked Floyd if he wanted to "go on a pass," without specifying that Floyd would be "going up for an institutional infraction that was violated." ECF No. 1 at 4. Floyd alleges that Lt. McKenzie lied on a report, stating that Floyd refused to appear in front of the hearing officer. *Id.* Hearing Officer Christopher Wedlock found Floyd guilty of assaulting an officer even after the officer reported that Floyd did not hit the officer before he was subdued during an incident at WCI on March 21, 2022. *Id.* at 4–5. Floyd asserts that a fair investigation would have revealed his innocence. *Id.* at 5. Floyd was sentenced to 180 days on disciplinary segregation and lost 180 days of good conduct credits. *Id.*

## II. Standard of Review

Defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted . . . ." To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must

show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"*[P]ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army*

*S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Floyd that he had the right to respond to Defendants' Motion, that the motion could be construed as one for summary judgment, and that if Floyd did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF No. 22. Moreover, Defendants' Motion, which identifies summary judgment as possible relief, provided sufficient notice for Floyd to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Floyd has filed a response in opposition to Defendants' Motion. ECF No. 24. Thus, the Court is satisfied that Floyd has been advised that Defendants' Motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the Motion. The Court will resolve the Motion under Rule 56 where appropriate.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. As noted, the Court will construe the motion under Rule 56 where appropriate. Defendants argue that (1) Floyd has filed to exhaust administrative remedies; (2)

Floyd has failed to state a claim under the Eighth or Fourteenth Amendments; (3) Floyd has failed to plead any claim for violation of his Fourth, Fifth, or Thirteenth Amendment rights; and (4) Defendants are entitled to qualified immunity. ECF No. 21-1.

### A. Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing

6

*Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process" so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. 2d at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where he did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *see also Griffin v. Bryant*, 456 F.4th 328 (4th Cir. 2022) (recognizing PLRA's "strict" requirement to exhaust all available administrative remedies").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines . . . ." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo*, 286 F.3d at 1024). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] . . . when prison officials prevent inmates from using the administrative process").

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] . . . ." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC

8

official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[3] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

---

[3] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

9

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing . . . ." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't, § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10-209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

Floyd states in the Complaint that he used the IGO process but never received a response. ECF No. 1 at 5. In response, Defendants submit the declaration of IGO Director, F. Todd Taylor, Jr., who attests that as of March 27, 2023, Floyd had not filed any grievances with the IGO concerning the misconduct alleged in the Complaint. ECF No. 21-2 at ¶¶ 5, 6. As Floyd's Complaint is verified, *see* ECF No. 1 at 8, it is the equivalent of an opposing affidavit for summary judgment purposes when the allegations contained are based on personal knowledge. *Davis v.*

*Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979). Because Floyd's statement is based on his personal knowledge and he swears it under the penalties of perjury, the Court construes it as an affidavit for the purposes of summary judgment. Thus, there exists a genuine issue of material fact as to whether Floyd exhausted his administrative remedies and therefore it is inappropriate to rule on this basis. The Court will instead turn to the merits of Floyd's claims.

### B.  Fourth, Fifth, and Thirteenth Amendments

The Complaint alleges violations of the Fourth, Fifth, and Thirteenth Amendments. ECF No. 1 at 1–2. However, Floyd does not allege any facts to support these claims. While the Court liberally construes the pro se Complaint, its bare legal conclusions are insufficient to satisfy federal pleading requirements. Fed. R. Civ. P. 8; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, these claims will be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring court to dismiss *in forma pauperis* action if it determines "the action . . . fails to state a claim on which relief may be granted").

### C.  Fourteenth Amendment

#### 1.  Conditions of Confinement

Defendants contend that Floyd cannot establish that his Eighth Amendment rights were violated because he does not demonstrate that he suffered or was at risk of a serious or significant injury. ECF No. 21-1 at 10. However, because Floyd was a pretrial detainee at the times relevant to the Complaint, his claim is properly construed under the Fourteenth Amendment.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The protections afforded convicted prisoners under the

Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). To state a § 1983 claim based on unconstitutional conditions of confinement, a pretrial detainee must allege "that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a legitimate nonpunitive government objective." *Timms v. U. S. Att'y Gen.*, 93 F.4th 187, 191 n.8 (4th Cir. 2024) (citing *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017)); *see also Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (noting plaintiff can state a claim based on a "'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose'") (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). "But not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 537). But "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 397).

Courts have repeatedly held that leaving a prisoner in a cell containing human waste is sufficiently dangerous to an inmate's health and safety as to satisfy the objective prong of this test. *See Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1991) (holding that overcrowded cells with sewage and urine, as well as insects and vermin, support an Eighth Amendment claim); *Walker v. Schult*, 717 F.3d 119, 126–27 (2d Cir. 2013) (holding that unsanitary cell conditions, including urine and feces on the floor, can constitute cruel and unusual punishment); *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (affirming a finding of an Eighth Amendment violation based on filthy living conditions including fecal matter and urine in cells); *McBride v. Deer*, 240 F.3d 1287,

12

1291–92 (10th Cir. 2001) (holding that three days in a feces-covered cell is a sufficient basis to state an Eighth Amendment claim); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989); *Taylor v. Larson*, 505 Fed.. App'x 475, 477 (6th Cir. 2012). "Not surprisingly, human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to it.'" *McBride*, 240 F.3d at 1292 (cleaned up). As such, Floyd's verified statement that he was housed in a cell containing human waste is sufficient to allege a plausible claim that he was subjected to objectively unreasonable conditions of confinement.

Defendants do not make any argument that they are entitled to summary judgment on this claim, asserting only that Floyd has made insufficient allegations. *See* ECF No. 21-1 at 10. Because Defendants present no evidence against Floyd's Fourteenth Amendment conditions claim, the Court will not construe the motion as one for summary judgment on this claim. Defendants' request for dismissal will be denied as Floyd has sufficiently stated a plausible claim for relief.

    **2. Deprivation of Property**

Floyd's due process property claim must be dismissed. Defendants submit a Record of Segregation Confinement, which includes an Information Report Form stating that Floyd refused to sign for his property from Correctional Officer Fann on April 12, 2022. *See* ECF No. 21-3 at 4–9. Regardless, in the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy.

*See, e.g.*, *Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] The Supreme Court has extended its holding in *Parratt* to intentional deprivations of property. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, even assuming Floyd's personal property was intentionally withheld from him as he alleges, such a claim does not rise to a constitutional violation. The claim must be dismissed under the provisions of 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996); *Nasim v. Warden*, 64 F.3d 951, 954–55 (4th Cir. 1995).

### 3. Disciplinary Proceedings

Prisoners retain rights under the Due Process Clause of the Fourteenth Amendment. In prison disciplinary proceedings, where an inmate faces the possible loss of diminution credits, the prisoner is entitled to certain due process protections. These protections include: (1) advance written notice of the charges against the prisoner; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where the prisoner is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) a written decision; (5) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (6) an impartial decision-maker. *See Wolff v. McDonnell* 418 U.S. 539, 563–66 (1974).

Floyd alleges that he was not permitted to appear at a disciplinary hearing on May 5, 2023. ECF No. 1 at 4–5. In response, Defendants submit the Inmate Hearing Record and Notice of Infraction. ECF No. 21-4. Defendant McKenzie completed an Inmate Waiver of Appearance. *Id.*

---

[4] *Juncker* dealt with personal injury rather than property loss. However, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property due to *Juncker*'s reliance on *Parratt* in dismissing the plaintiff's due process claim.

at 1. McKenzie stated that, on the morning of the hearing, he arrived at Floyd's cell and instructed him to "cuff up" for an adjustment hearing, but Floyd refused, stating "No, I'm Pre-Trial and I don't fall under your rules." *Id.* McKenzie instructed Floyd that he was subject to NBCI's rules and should attend his adjustment hearing. *Id.* Floyd refused again, so McKenzie explained that it would occur in his absence. *Id.* McKenzie asked him to sign the Waiver of Appearance, but Floyd refused. *Id.* McKenzie attested to this interaction under oath at the adjustment hearing before Defendant Wedlock. *Id.* at 4. Wedlock, finding McKenzie's testimony reliable and credible, found that Floyd was "given the opportunity to appear at his disciplinary hearing and voluntarily refused to do so." *Id.*

Having reviewed the record in its entirety, and viewing the evidence in the light most favorable to Floyd, the Court finds that a genuine issue of material fact exists precluding summary judgment. Specifically, there is a dispute regarding whether Floyd was informed of and given the opportunity to attend his disciplinary hearing on May 5, 2023. Floyd attests in his Complaint that McKenzie failed to inform him that it was time for his disciplinary hearing when he asked Floyd if he wanted to "go on a pass." ECF No. 1 at 4. This contradicts the version of events presented by McKenzie in the Waiver of Appearance form and later at the disciplinary hearing. Thus, the question of whether Floyd was given all the process he was due by having the opportunity to appear at and participate in his disciplinary hearing is in dispute. Floyd's due process claim against McKenzie shall proceed.

However, where a prisoner claims, as Floyd does here, that prison officials fabricated charges in order to cause them to lose good conduct credits and lengthen their sentence, the claim is improperly raised in a § 1983 complaint for damages. *See Moskos v. Hardee*, 24 F.4th 289, 294 (4th Cir. 2022). Such a complaint "must be dismissed unless the plaintiff can demonstrate that the

conviction or sentence already has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "[T]his rule applies not merely to substantive challenges to convictions, but also to those challenges to internal prison procedures that would be 'such as necessarily to imply the invalidity of the judgment.'" *Moskos*, 24 F.4th at 295 (quoting *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)). To the extent Floyd's due process claim requires the Court to determine whether the allegations against Floyd were true, his claim cannot be raised in the context of a § 1983 suit. Thus, Floyd's claim against Wedlock is not appropriate in the context of this suit and shall be dismissed.

## VI. Conclusion

For the foregoing reasons, the Court shall grant in part and deny in part Defendants' motion to dismiss or, in the alternative, for summary judgment. Floyd's Fourth, Fifth, and Thirteenth Amendment claims are dismissed for failure to state a claim. Floyd's Fourteenth Amendment property claim and due process claim against Defendant Wedlock are also dismissed for failure to state a claim. Only Floyd's Fourteenth Amendment claims against Defendant Crowe for unconstitutional conditions of confinement and against Defendant McKenzie for violation of due process shall proceed. Because it is anticipated that discovery will be necessary to complete the factual record, I will appoint counsel to represent Floyd.

A separate Order follows.

| | |
|---|---|
| __3/15/24__ | __/S/__ |
| Date | Matthew J. Maddox |
| | United States District Judge |